IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOZAM ALAJMI, | § | |
| | § | |
| **Plaintiff,** | § | CIVIL ACTION NO.: |
| | § | |
| v. | § | **4:14-cv-00753** |
| | § | |
| | § | |
| THE METHODIST HOSPITAL, | § | |
| | § | JURY DEMAND |
| **Defendant.** | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONARABLE JUDGE OF SAID COURT:**

**COMES NOWS** HOZAM ALAJMI, individually and on behalf of himself (hereinafter referred to as "Plaintiff" or "Mr. Alajmi"), and files this Plaintiff's Original Complaint against the Methodist Hospital (hereinafter referred to as "the Hospital"), and would respectfully show unto the Court as follows:

### PARTIES

1.      Plaintiff is an individual citizen of the Kingdom of Saudi Arabia with his permanent residence in Riyadh, Saudi Arabia.

2.      Defendant is a nonprofit corporation formed and existing under the laws of Texas and which maintains and operates a Hospital in Harris County, Houston, Texas, and may be served by and through its registered agent for service of process, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount of damages sought is in excess of Seventy Five Thousand Dollars ($75,000), exclusive of interest and attorneys' fees.

4.      Venue is proper for this action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, or alternatively, because Defendant resides in this judicial district.

## FACTUAL BACKGROUND

5.      Mr. Alajmi has been a patient at The Methodist Hospital in Houston since 1996. Each time Mr. Alajmi sought the Hospital's medical treatment, he provided, as a form of payment, either medical insurance furnished by the Saudi government, or a financial guarantee from the Armed Forces Office of the Royal Embassy of Saudi Arabia in Washington D.C., to cover all expenses of his and his family's medical treatment.  The Hospital has successfully and consistently received full payment for <u>all</u> medical treatments it provided to Mr. Alajmi from either or both forms of payment.

6.      On or about October 24, 2011, Mr. Alajmi returned to the Hospital seeking new treatment because he values the long standing relationship he built with the Hospital, and because the Hospital's billing staff is familiar with Mr. Alajmi's status as a diplomat and his usual method of payment (the financial guarantee).

7.      Mr. Alajmi provided a new financial guarantee ("the Guarantee") backed by the Armed Forces Office of the Royal Embassy of Saudi Arabia in Washington DC. This Guarantee, a copy of which is attached hereto, clearly states "the Armed Forces Office of the Royal

Embassy of Saudi Arabia will honor invoices and guarantee payment for the above-mentioned patient -Hozam Alajmi." Coverage of this guarantee extended form October 24, 2011 to January 24, 2012.  *See* Exhibit "A".

8.     Any and all billing matters, pursuant to the Guarantee, were to be addressed to the Armed Forces Office.  The Hospital billed the Armed Forces Office for the medical treatment Mr. Alajmi received in 2011.  Even though not necessary to protect his health information, Mr. Alajmi instructed the Hospital not to contact anyone regarding his treatment or his billing other than the party named in the Guarantee.

9.     On April 4, 2013, unbeknownst to Mr. Alajmi, an employee of the Hospital, Summer Dajani, working within the scope of her employment, dispatched a letter (attached hereto as Exhibit "B") to Sultan A. Al Angari, the Consul General of Saudi Arabia in Houston, disclosing to him that Mr. Alajmi is a patient at Methodist, that Mr. Alajmi and his sons Naif and Mansour received medical care at Methodist Hospital, and that they allegedly owed Methodist Hospital a total sum of $31,112.87 as outstanding debt.  *See* Exhibit "B".

10.     The Consul General of Saudi Arabia in Houston is not mentioned anywhere in the Guarantee as a responsible payor, nor is the Consul General of Saudi Arabia mentioned as Mr. Alajmi's employer or legally authorized representative.

11.      Mr. Alajmi never consented to or authorized the Hospital, verbally or in writing, to disclose any information regarding his or his sons' health information to the Consulate General of Saudi Arabia in Houston. Because Mr. Alajmi is a diplomat, The Ministry of Foreign Affairs in Riyadh, Saudi Arabia is his official employer NOT the Consulate.

12.     Nevertheless, upon information and belief, the Hospital, through its employee Summer Dajani conspired with an employee of the Consulate General of Saudi Arabia in

Houston to wrongfully disclose Mr. Alajmi's health information, knowing that the disclosure of Mr. Alajmi's health information would significantly damage Mr. Alajmi's reputation within the consulate and in Riyadh and damage his promotion opportunity.

13.     The Hospital's letter of wrongful disclosure to the Consulate General of Saudi Arabia in Houston contained false statements because Mr. Alajmi did not owe money to the Hospital.

## FIRST CAUSE OF ACTION
### (Libel)

14.     Plaintiff re-alleges and incorporates by reference all factual allegations contained above.

15.     For a libel claim under Texas law, the plaintiff generally must show that, on basis of the evidence, a reasonable jury could have concluded: (1) defendant published a statement, (2) statement referred to the plaintiff, (3) statement was defamatory, and (4) defendant acted with negligence regarding truth of published statement. *Stoddard v. West Telemarketing, L.P.,* W.D.Tex.2008, 539 F.Supp.2d 889.

16.     A Hospital employee sent a "collection" letter demanding payment for an alleged "unpaid" account belonging to Mr. Alajmi and his sons to a third party, the General Consul of Saudi Arabia.  The letter was then disseminated to the Saudi Government in Riyadh.

17.      The Hospital's letter alleged erroneous and false facts.  Mr. Alajmi had a financial Guarantee from the Armed Forces Office of the Royal Embassy of Saudi Arabia in Washington D.C., thus, he could not have an "unpaid" account.  In fact, the Hospital had received payment using this Guarantee in the past on multiple occasions.

18.     The Hospital <u>never</u> contacted Mr. Alajmi directly, by phone or postal mail regarding this alleged debt.  The Hospital never contacted the Armed Forces office in Washington D.C. who issued the financial guarantee regarding this debt.  However, the Hospital chose to contact a third party and disclose health information. This conduct is clearly intentional and malicious, and in the alternative, negligent.

19.     Mr. Alajmi is a native of Saudi Arabia on diplomatic duties in the United States. Saudi Arabia is a conservative Muslim country. Its culture and morals absolutely condemn any form of financial irresponsibility. Not paying one's debt is a serious moral offense, which can lead to irreparable damage to the reputation of any one accused. As a result of the Hospital's libelous letter, Mr. Alajmi's reputation was tarnished; he was severely reprimanded by the ministry of Foreign Affairs in Saudi Arabia. Consequently, he duties in the consulate were terminated, his monthly salary has been suspended for a period of over 10 moths, his employment benefits have been revoked including but not limited to housing, transportation, food and utilities allowances. Furthermore, his chances of being promoted to general Consul of Houston have been seriously compromised.

20.     Mr. Alajmi suffered serious embarrassment, humiliation and mental anguish, which exacerbated his current medical condition.

21.     Accordingly, Plaintiff is entitled to his actual damages sustained from the Hospital's libelous letter reasonable attorneys' fees, and punitive damages in an amount not less than Five Million Dollars ($5,000,000.00).

## SECOND CAUSE OF ACTION

### (Violation of § 241.152 of the Texas Health and Safety Code)

22.     Plaintiff re-alleges and incorporates by reference all factual allegations contained above.

23.     The Texas Health and Safety Code § 241.152 prohibits a Hospital or an agent or employee of a Hospital from disclosing health information about a patient to any person other than the patient or the patient's legally authorized representative without the written authorization of the patient or the patient's legally authorized representative.

24.     The Texas Health and Safety Code § 241.156 grants a private cause of action to individuals aggrieved by a violation of this subchapter relating to the unauthorized release of confidential health care information may bring an action for: (1) appropriate injunctive relief; and (2) damages resulting from the release.

25.     The Hospital, through its employee and agent Summer Dajani, disclosed health information about Mr. Alajmi and his sons to a third party without his authorization.

26.     Mr. Alajmi, as a direct result of the Hospital's conduct, suffered mental anguish, loss of current and future income, loss of promotion opportunity and damages to his reputation.

27.     Accordingly, Plaintiff is entitled to his actual damages sustained from the unauthorized disclosure of his health information and reasonable attorneys' fees in an amount not less than Two Hundred and Fifty Thousand Dollars ($250,000.000).

## THIRD CAUSE OF ACTION

### (Negligence Per Se)

28.     Plaintiff re-alleges and incorporates by reference all factual allegations contained above.

29.     Defendant's unauthorized disclosure of health information was in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), and the Texas Medical Records Privacy Act ("TMRPA"), and thus constitutes negligence per se.

30.      "The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent." *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998).

31.     Under HIPAA and TMRPA, covered entities are authorized to use or disclose health information with health care providers for payment. *See* 45 C.F.R. § 164.501; *see also* TEX. HEALTH & SAFETY CODE 181.052(b)(1).  Written authorization, however, is required before sharing health information with "any person other than the patient or the patient's legally authorized representative." *See* TEX. HEALTH & SAFETY CODE 181.151; *see also* 45 C.F.R. § 164.506(b)(1).

32.     Mr. Alajmi never authorized the Hospital, or consented to the release of his Health Information to anyone but the Armed Forces Office

33.     "Health Information' means 'any information, whether oral or recorded in any form or medium.'" *In re Collins*, 286 S.W.3d 911, 917 (Tex. 2009) citing 45 C.F.R. § 160.103 (2008); *see also* TEX. HEALTH & SAFETY CODE 181.006(1) ("any information that reflects that an individual received health care from the covered entity.")

34.     Mr. Alajmi, as a direct result of the Hospital's unauthorized disclosure of his health information, suffered embarrassment, humiliation, loss of current and future income, loss of promotion opportunity and damages to his reputation. Accordingly, Plaintiff is entitled to his actual damages sustained from the negligent disclosure of his health information in violation of

HIPAA and TMRPA, reasonable attorneys' fees, and punitive damages in an amount of not less than Five Million Dollars ($5,000,000.00).

## FOURTH CAUSE OF ACTION
### (Invasion of Privacy)

35.     Plaintiff re-alleges and incorporates by reference all factual allegations contained above.

36.     The elements of a claim for invasion of privacy are (1) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs; and (2) the intrusion would be highly offensive to a reasonable person. *See Valenzuela v. Aquino,* 853 S.W.2d 512, 513 (Tex.1993) (citing Restatement (Second) of Torts § 652B (1977)); *Russell v. Am. Real Estate Corp.,* 89 S.W.3d 204, 212 (Tex.App.-Corpus Christi 2002, no pet.); *see also Clayton v. Wisener,* 190 S.W.3d 685, 696 (Tex.App.-Tyler 2005, pet. denied).

37.     The Hospital intentionally disclosed Mr. Alajmi's health information.

38.     The disclosure of Mr. Alajami's health information was an intrusion on Mr. Alajmi's private affairs.

39.     The disclosure of Mr. Alajmi's health information, especially for private benefit, was highly offensive and caused Mr. Alajmi irreparable harm.

40.     Accordingly, Plaintiff is entitled to his actual damages sustained from the Hospital's invasion of his privacy, reasonable attorneys' fees, and punitive damages in an amount not less than Five Million Dollars ($5,000,000.00).

## FIFTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

41.     Plaintiff re-alleges and incorporates by reference all factual allegations contained above.

42.     To recover damages for intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999) (citing *Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62, 65 (Tex.1998)).

43.     The Hospital intentionally and/or recklessly wrongfully disclosed Mr. Alajmi's health information.

44.     The wrongful disclosure of Mr. Alajmi's health information was in violation of HIPAA and TMRPA and highly offensive, and thus, extreme and outrageous.

45.     As a result of the Hospital's wrongful disclosure, Mr. Alajmi suffered severe emotional distress.

46.     Accordingly, Plaintiff is entitled to his actual damages sustained from the Hospital's intentional infliction of emotion distress, reasonable attorneys' fees, and punitive damages in an amount not less than Five Million Dollars ($5,000,000.00).

## SIXTH CAUSE OF ACTION
### (Civil Conspiracy)

47.     Plaintiff re-alleges and incorporates by reference all factual allegations contained above.

48.     A civil conspiracy is "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995). An actionable conspiracy consists of: (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more overt acts; and (5) damages as a proximate result of the conduct. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983).

49.     Summer Dajani, a Hospital employee, in concert with an employee of the Consulate General of Saudi Arabia conspired together with the objective of humiliating Mr. Alajmi and ruining his reputation by wrongfully disclosing Mr. Alajmi's health information in violation of HIPAA and TMRPA.

50.     As a result of their wrongful disclosure, Mr. Alajmi suffered damages.

51.     Accordingly, Plaintiff is entitled to his actual damages sustained from the Hospital's civil conspiracy, reasonable attorneys' fees, and punitive damages in an amount not less than Five Million Dollars ($5,000,000.00).

## VICARIOUS LIABILITY

52.     Under the doctrine of Respondeat Superior in Texas, an employer is liable for the negligent act or omission of any employee acting within the course and scope of his employment. Additionally, an employer maybe vicariously liable for the fraudulent act of its employees if the employee was acting within the scope of employment. See *Millan v. Dean Witter Reynolds, Inc*. 90 S.W.3d 760,767-68 (Tex. App.-San Antonio 2002, pt. denied); *NationsBank*, 922 S.W.2d. at 953-54.

## DEMAND FOR JURY TRIAL

54.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand a

trial by jury on all questions of fact raised by this Original Petition and on all other issues so

triable.

## PRAYER FOR RELIEF

WHEREFORE, PREMSISE CONSIDERED, Plaintiff prays that this Court require

Defendant to appear herein, and upon final judgment grant Plaintiffs its relief requested herein,

and such other and further relief as Plaintiff may be entitled to in law or equity.

March 24, 2014                                      Respectfully submitted,


                                                    /s/ Mehdi Cherkaoui

                                                    Mehdi Cherkaoui
                                                    Southern District of Texas ID No. 2101221
                                                    Texas Bar No. 24086077
                                                    Cherkaoui & Associates P.L.L.C.
                                                    1200 Smith Street Suite 1600
                                                    Houston, TX 77002
                                                    Phone: 281-946-9466
                                                    Fax: 877-282-7874
                                                    Mehdi@cherkaouilawfirm.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing instrument has been properly

forwarded to The Methodist Hospital's agent of service listed below by United States Certified

Mail Return Receipt Requested on <u>03-24-2014</u>, addressed as follows:

*__Via First Class Mail to:__*                              *CMRR 9414 7118 9956 0666 6599 10*

CT Corporation System,
1999 Bryan St., Ste. 900
Dallas, TX 75201-3136

                                        <u>/s/ Mehdi Cherkaoui</u>

                                        Mehdi Cherkaoui
                                        Cherkaoui & Associates P.L.L.C.
                                        1200 Smith Street Suite 1600
                                        Houston, TX 77002